Thank you very much, Your Honor. Good afternoon, Your Honors. Mark Vanderhout, appearing as appointed pro bono counsel for Mr. Oshodi, along with Lisa Weissman Ward from my office. Mr. Oshodi would have been here today. Also, we received a call shortly before argument that he was taken to the hospital, unfortunately. This case involves an individual who testified to and submitted extensive corroborating evidence about three separate incidents in a two-month span in which he was arrested, beaten, and in two of the incidents, brutally abused and tortured by the Nigerian government, and for which an expert witness testified that he would likely, very likely, suffer horrifically and possibly be killed if returned to Nigeria, assuming what Mr. Oshodi said was true. The expert testified that Mr. Oshodi's testimony was consistent with the expert's knowledge of Nigerian politics. At the beginning of the case, the immigration judge told Mr. Oshodi, who was then an unrepresentative, that the newly enacted Real ID could, in general, require corroboration, and it was recommended he get it. Mr. Oshodi did just that. He obtained extensive, relevant, and probative evidence on the major issues relating to his asylum claim, including evidence of beatings, forced sodomy, gunshot wounds, cigarette burns. He was examined by a medical doctor. He was examined by a psychiatrist. He had police reports. He had hospital reports. So, counsel, do you agree, then, that the immigration judge apprised Mr. Oshodi in advance that he would need corroborating evidence? No, Your Honor, I do not. And the reason is, he just basically said what the statute said, which is that, in general, now, corroborating evidence may be required, and he recommended that he get it. Why wasn't that noticed? It was noticed that it would be a good idea to get, generally, corroborative evidence. But it wasn't noticed. You say generally. He didn't say generally. He said you should get it. It's a good idea. Like your doctor says, it's a good idea you stop smoking. This is a guy who's going to be deciding his claim. He says, you know, I think it's a good idea for you to bring corroborating evidence. What more notice is necessary? Because what is necessary, Your Honor, and he did exactly that. He got police reports, and he got the hospital reports. Well, we're just, we're just, we're just answering, we're talking about Justice Rolison's question. And we can go on to talk about other stuff, but right now, we're talking about the question of notice. And Justice Rolison asked, do you think he got notice? You say, I agree, he got notice, and you seem to disagree. That's correct, Your Honor, and I'll explain why. Because the immigration judge then went on in his decision to announce that he should have provided corroborating evidence. What? On completely unrelated issues to the merits of the essential part of the claim. In other words, he had an individual... He can do that. The statute specifically says it doesn't have to be, go to the merits, right? Well, I think... Overruled our case law saying otherwise. That was on the issue of the, on the issue of adverse credibility. It could be considered issues that don't go to the heart of the claim. And he used the fact that he didn't corroborate, he being the judge, used the fact that he didn't corroborate certain things to say also that he was not credible. And in this case, then, the corroboration issue and the lack of it melded together with the adverse credibility finding. But to go back to your... Now, in your view, what specific corroborating evidence that was not supplied did the I.J. hold against Mr. Oshadi for not having provided? I understand perfectly, because the I.J. made it very explicit, well, your brother was right there and you didn't put him on the stand. What other corroborating evidence besides the brother was the I.J. wanting? In his decision, and in all of these things, the judge did not say once to Mr. Oshadi, I'm not convinced about this, please get it. I understand that. But I'm asking you, what specific evidence did the I.J. want that had not been supplied? Corroboration regarding, and he announced this in his decision, corroboration regarding membership in NONS, the student group or the political group UPN. Never told him about that. He did not corroborate his claim, the judge said, that there was an open warrant for his arrest. Didn't tell him that either. Although there was a corroboration of that, in fact, in one of the letters that was submitted. He did not provide information about, he said who he was. That's one of the corroborating things the judge announced in his decision. But never, never in the decision, is there any dispute, I'm sorry, in the hearing, is there any dispute about who he is? The government charges that he's Olenkali Oshadi. The NTA charges that. All the documents, there's never an issue in the hearing, we're not really sure who you are. The judge announces that in his decision. He does not provide. So counsel, just so I understand your argument, are you saying that the IJ has to list the specific matters for which there has to be corroboration, and if he does not list a particular item, then the decision cannot refer to a lack of corroboration for that item? On a particular item, yes, Your Honor. And the reason is the following. He is told to get, and the statute advises him in general. How does the IJ know? What's your answer to that question? He said yes. The statute. Were you trying to answer Judge Rollinson's question? Yes, I was, Your Honor. Thank you. Well, why don't you do that? The statute. Well, you said yes. You did answer the question. I was asking. Was that the answer to the question? How does he know ahead of time what it is that's going to actually need corroboration? How can he list these things before the hearing? He doesn't. And that's precisely the point of the statute. The statute says where the immigration judge determines that corroboration is required. And that means, as this Court went through in the Wren decision, that means that the judge first has to decide that corroboration is required. When does he decide that? He has to decide that after hearing the evidence. And then he has to advise him. He has to say, I'm not convinced about this. Counsel, in our decision in Wren, didn't we make clear that the corroboration only kicked in if we believe that the witness was otherwise credible? The facts of that case involved that, Your Honor. But here, the — Well, isn't that what the statute says? The statute says that. But I think the statute has to be read as a whole, Your Honor. And also due process requires it. Just as this Court has said that due process requires the notice of inconsistencies. Our Wren decision, Counsel, came under the burden of proof provision of the new act, not the credibility provision of the new act. That's correct, Your Honor. But, Your Honor, in a — So why would this case justify an extension of Wren? Well, Your Honor, actually, you — in the decision of Kudoshoff, which Your Honor was on, you actually did extend that to the credibility determination. Because in Kudoshoff, the lack of corroboration was — was used to sign adverse credibility. And you and the other individual members of the Court said that that has to be told to the individual. Just like in Wren, for the burden of proof part, it has to be told to the individual. And it makes total sense. Because how is somebody supposed to guess, what is it the judge wants me to corroborate? Here he presented evidence of the fact he was in the hospital. He presented evidence of the fact that he was arrested. He had a medical examiner come to court — not to come to court, but wrote a report that verified that he had been brutally beaten, cigarette burns, et cetera. How is he to know, unless he's advised — the judge said, well, wanted to know about the NANS membership. I'm not sure I believe that. So that's why it is important. And that's why Your Honor, in the Kudoshoff decision, agreed that you've got to give notice to that. Counsel, does it matter that this statute speaks primarily to the burden of the petitioner in presenting evidence and not to what the obligation of the IJ is in this context? Does that matter to your argument? Well, the burden of proof certainly is on the petitioner. But the statute does say where the IJ determines that corroboration is required. And that implicitly, as the Wren decision went through, that implicitly means that the judge has to advise. Because it also says the person has to produce it or has to reasonably explain why it isn't there. Well, but the statute doesn't contain any notice requirement imposed on the IJ, does it? The burden of proof statute does not. I believe it does, Your Honor. I believe it has to be read that way, that the statute imposes an obligation on the IJ to advise, because it says where the IJ determines, the obligation determines that corroboration is required. He's got to give him an opportunity to present it, or the person has to reasonably explain why it's not there. That has to, therefore, be within the context of the hearing, as this Court went through in detail in the Wren decision. How is this going to work as a practical matter? Is that going to require cases where the IJ determines that corroboration is needed, a continuance, and then a second hearing? Well, not always, because as this Court pointed out in Wren, it won't, sometimes the individual will say, well, I can't get it, I don't have that, and then explains why not. And then the judge makes a determination, is that a reasonable explanation or not. But what if the judge says, if you give me 60 days, I can get that information, is the IJ obligated to give him a continuance at that point? Well, I think it depends on the facts, Your Honor. But I think in general, yes, because the IJ has to make that determination and has to advise. And that's what happened in Wren. And the individual was given time to come back to court, didn't, and got denied. Do you have any case authority on the question of whether a general warning that you need corroboration is sufficient? That a general notice is sufficient? I don't know, Your Honor. I don't believe that it is. And do you have any cases either way? Well, I think the Wren decision requires that, and also the Campos-Sanchez decision. The decisions that go through the notice required when there's inconsistencies. This Court has said that due process requires notice of alleged inconsistencies and an opportunity to explain those. And the same principle applies for the lack of corroboration. Have any other circuits gone that way? Pardon? Have any other circuits gone that way? TOR, the Third Circuit, T-O-U-R-E, we cited that in our brief, Your Honor, went that way also. The Third Circuit? Third Circuit, yes. And due process. Have any circuits gone the other way? Yes, the Seventh Circuit went the other way. And the Second? Seventh. Seventh Circuit. Counsel, assuming, let's just say you're correct about the corroborating evidence in the notice point, wouldn't we still have to look to see if there is sufficient other evidence supporting the adverse credibility findings by the IJ? I mean, based on, there were many grounds that he listed. That's, it is correct there were many grounds, and let me address that, Your Honor. Here you cannot separate. If there were an alternative finding, if there were an alternative finding that said there were six inconsistencies, and I would like to address those because we don't think the inconsistencies are supported by substantial evidence in the record, but even assuming that they were, the judge said another reason, the Board of Immigration Appeals in this decision, this is at page three of the administrative record, says that the adverse credibility determination is in part due to the lack of corroboration. And the court can't separate. The court can't stand here and say, well, probably the immigration judge would have decided he was not credible, even forgetting the lack of corroboration, because it was an integral part and not an alternative finding. Here in this case, you can't do that. If the judge had done an alternative finding, then, yes, you could. There's no difference. Mr. Vanna, there was another issue in this case that kind of struck my interest, and it's not related to the credibility of the notice issue, but it's the problem at the outset of the hearing where the I.J. cut off. That's correct, Your Honor. O'Shaughney. Could you discuss that issue, Mr. Vanna? Yes, Your Honor. So here's the issue, and it goes into the, really the authentication issue, and I think that's a major issue. It was briefed extensively in the first round of briefing before this case went on bond by Mr. Nugent before he became ill. And the issue there was that the judge excluded certain evidence, key evidence. He didn't exclude. He said that he had read the application and there was evidence in the application. Right. But he didn't need to hear testimony on it because he'd read the application. He didn't want him to go down line by line. There's no need to go down line by line. Right. Correct. And I'm going to get to that because it goes into the authentication issue. Well, it goes into every issue, doesn't it? It goes to the heart of the claim because he wasn't around. All right. Well, would you discuss what it is then? Okay. So he said, I don't really need to hear from you on the details. I've got your declaration. And when he started to testify, he said, I don't really need you to go into that. And so he wasn't really able to present his case. And the reason it's tied in to the other evidence, and this is crucial, because there was tremendously strong supporting documentation presented. There was two police reports and a hospital report from Nigeria. And that is not always the case. You can get that evidence. That was excluded because of lack of authentication. Why was it excluded? That's not what Judge Pius was asking about, as I understood it, what I'm asking about. I'm asking about, was he allowed to testify as to the acts of persecution? He was not. He testified briefly on cross. But the judge said, I don't want you to repeat everything that is in your declaration. So he prevented from testifying, Your Honor, on that. And that was crucial. Was there any point in that transcript in which he attempted to testify on something and the IJ interrupted him to say, look, I've already warned you, I didn't want to hear about this again? Yes, right at the very beginning of the testimony. He said, I want to stop you. I don't want you to repeat line by line what's in your declaration. Is there anything, right, that's what Judge Reinhart and Judge Pius were referring to. Was there anything after that where the IJ said, wait a minute, I've already given you a warning, don't go down this road? I didn't see anything. I don't, I'm not sure that there is, Your Honor, but he's left with that instruction. And so the attorney doesn't go into that. And I would like to tie it back. It goes right off into cross-examination, if I remember correctly. Pardon? It goes to the government's attorneys against cross-examination. A little bit goes into cross-examination. But the reason that this is important, it goes to the documents that were excluded, is because those documents which are key evidence were excluded supposedly for lack of authentication. Authentication can be by testimony. Yet he was prevented from testifying. He did testify about it, somewhat limited. So we think it was error to disallow those police reports in the hospital. But the IJ said, don't repeat what's in the declaration. Correct. So the declaration authenticated the documents, and they would have been authenticated. If it wasn't, then he wasn't prevented from testifying as to that, right? But this Court has held time and time again that it's not sufficient. Is it, was he prevented from testifying as to stuff that was not in the declaration? As to, well, he's still. He could authenticate the document. He could have testified as to that. It would not have conflicted with what the IJ. Well, the declaration, as Your Honor said, the declaration could, did authenticate them, and we think it was error to exclude those. And so that is a separate issue before the Court, and we think that the case should be overturned on that basis alone, because those documents were excluded. If they had been admitted, those would have been even more corroborating evidence. All these exhibits, were they neatly attached to his declaration that went into his application? Didn't they come in over time? They came in subsequently, correct. They came in subsequently. And they're not even referred to. Subsequently to what? Subsequently to his declaration. His declaration was attached to the application, correct? Correct. And then he submits evidence. So the. He came in afterwards. He couldn't have very well authenticated them in his declaration. Well, the declaration. He came in afterwards, right? This Court has held that the testimony and including declarations. I'm asking a fact. I'm not asking a theory. I'm asking a fact. You said he authenticated them in the declaration. By the fact. And then you said they came in later. Well, they came in later. To tell you the truth, I'm not positive when they came in. But either way, Your Honor, they don't have to be. A declaration doesn't have to say, and here's this police report. And it says the declaration, if it's consistent with this under this court's law, under the rules, would be authentication. Testimony can authenticate. And for an asylum applicant, this Court has held time and time again that the rules have to be loosely interpreted because it's so difficult to get evidence. So that is an important point. And that was excluded from the evidence. Well, he wasn't represented at the time he filed. He was not represented. He was pro se. He was pro se until 45 minutes into the merits. He was in custody at that time. The merits of the hearing. He was in custody. He was in custody the entire time, Your Honor. Was he represented when the petition for review was filed? He was represented at the petition for review, Your Honor. There was pro bono counsel that was obtained from the Board of Immigration Appeals on. Did the petition for review raise the notice issue? Yes, it did. Absolutely. Absolutely. The question I was trying to determine from you was what was he allowed to testify about before the judge told him that he didn't want him to testify to what was in the application? Did he testify to the facts regarding the torture? Did he testify to all of his complaints? He was not allowed to testify to that, Your Honor. He was cut off right at the very beginning when he was starting to go into that. All right. So your representation is that he was not allowed to testify to the facts that gave rise to his claim of persecution. It's because the judge said I've already got this in the declaration. He wasn't allowed to testify correct. And this Court has held that someone's got to be allowed to testify. Judge cannot decide the application solely based on the – I'm sorry, cannot decide the – make the case decision based on the application alone. You have testimony. In this case, in this case where there's an adverse credibility determination. Certainly not. Certainly not. He is allowed to testify to new things. But where have we said that he is – he must be allowed to testify to things that are already in the application, that are already in the affidavit? Your Honor, I don't – He can't be limited to that. There's no doubt about that. He can say more things. He can add. He can embellish. He can contradict. He can recant. He can do all sorts of things like that. But where do we say that if it's in the affidavit that the IJ has to let him vocalize it? I'll have to defer and supply that case later on. But there was a case – You know about Kovner? In this district, as a matter of fact, where an immigration judge in Los Angeles went – I mean, central district? Yes. That immigration judge went on the applications only, and this court said that violates the statute and its constitutional rights. But I'll supply that later. I quite honestly don't remember the name of it. But there's several cases that have held that, Your Honor. Could the IJ just say, don't bother to testify? Everything's in your application? No. That's what the lawsuit was about, and I'll get that name of that case. I forget it, but that's what the case is. But that's not very helpful, because the IJ can't say, look, you're limited to your application. Cannot say, correct. Cannot say. He is entitled to come in, and he's entitled to say, in addition to the application, I've got a bunch of other stuff to testify about. As a matter of fact, that's the stuff in my application that I now remember differently, and I want to correct. He must be allowed to do that, or he must be allowed to add things. But we're talking about the questions, where does it say that he must be allowed to repeat what he already has said under oath in his declaration? Again, Your Honor, I'll have to supply supplemental citation to the court. I believe the court has addressed that, and I'll be happy to. I believe, Your Honor. Please, so we can overrule it. Pardon? No. You can overrule that, Your Honor, but I think it would violate due process if he's not allowed to even testify, especially when credibility is the key. Well, we could have all of our credibility. Tell us how that affects credibility. Is demeanor a factor? Is it a factor that the I.J. is supposed to consider? It has to, under the statute and the court's case law. And can you judge demeanor if you only have the application? Of course not, Your Honor. Of course not. So if it doesn't say that, we ought to overrule it. You should overrule if it doesn't say that. I believe it does say that, and I think that would be the rule of this court. I'll save my remaining eight minutes for rebuttal, if that's fine with the court right now. Okay. Thank you. We'll hear from the government. Go right ahead. Good afternoon, Your Honors. May it please the Court. John Blakely on behalf of the Respondent and Attorney General of the United States. Your Honors, this is simply a credibility case, a credibility case in which corroboration played an extremely minor role. This is not a question of the attorney general. What's the answer to the question? It's a question of judging credibility if he's not allowed to testify to the basic facts because they're in the affidavit. Your Honor, there are 200 pages of transcripts here, and in that 200 pages of transcripts, the I.J. had more than sufficient opportunity to judge the demeanor, and that includes cross-examination. But not on the basic issues of whether he was tortured. That's what he says in his declaration. He describes the torture he was subjected to, right? And the I.J. did not allow testimony on that so that he couldn't judge his credibility on the description of those acts because he wasn't allowed to testify to it. Your Honor, I think it's a little bit of a stretch to say that he wasn't allowed to testify, and please allow me to explain that. What the immigration judge said was, I don't need to hear a line-by-line version of what was in your asylum application. It says, do you have other things? Do you need to expand on that, was what the I.J. offered. So does that mean that the I.J. was taking everything in his affidavit as true? That would depend upon the credibility determination. Assuming that at the end he had found him credible, then everything would have been presumed true that was in the asylum, the statement supporting the asylum application, Your Honor. So let me, there was no stipulation that the affidavit, that they were going to proceed in this manner, is that correct? No, Your Honor, there was not. But there was every opportunity to provide. And the board has said, I think, in in re fife, f-e-f-e? I'm not familiar with that. That the petitioner should be allowed to testify. And he was allowed to testify. To the contents of the application. Your Honor, if he was allowed to testify to the contents of his application, like Judge Bybee alluded to earlier, if there's not a single time after that one statement from the immigration judge. Well, how many times do you need an instruction from a judge to disregard it before you say, well, I'm not going to pay attention to the instruction you gave me? Depends on the judge. Yeah. If it's Judge Kaczynski, don't try it. And maybe even in front of this judge, too. He was a bit of a hard nose. In some ways, Your Honor. I have a question for you. Reading this statute, the credibility determination statute, it seems to instruct the judge as to what he should be considering. Which factors he should be considering. It expressly says, considering the totality of the circumstances and all relevant factors, a trier of fact may base a credibility determination on dot, dot, dot. The consistency between the applicants or witnesses written in oral statements. Doesn't that seem to imply that Congress contemplated that the petitioner would have the opportunity to testify and elaborate upon what was in the asylum application? I can see how you would read an implication into that, Your Honor. I think maybe I'm going to twist around to Judge Pius's question. Why don't you answer my question? Because I have a follow-up to it, too. Okay. Well, whether you could read this to say that I wouldn't say it implies a duty. And it's important there to recognize what the REAL ID Act actually did. But you do agree that there's an implication that the IJ should consider the consistency between the applicants or the witnesses written in oral statement. Do you agree with that? That it's important to look at the consistency between the application and the testimony? Certainly. Let me ask my follow-up to that, though, okay? Do you think that the language considering the totality of the circumstances and all relevant factors should be read as requiring the IJ to consider the totality of the circumstances and all the relevant factors? I'm trying to figure out whether that's mandatory language or, well, I think it might be mandatory language. What do you think? I would agree that an immigration judge is required to consider the totality of the circumstances. Including demeanor? Including demeanor, Your Honor, and including any other relevant factor, including an alien's failure to corroborate in a given context. But I think it's important to go to your question and weave it into Judge Pius's, because he asked would you assume credibility. And I would say no to that, because you're going to consider the totality of circumstances for that. But presume consistency, I would suggest that if an immigration judge was going to say that there's no need to testify here, I think a presumption of consistency might be appropriate in those circumstances. So no to credibility, perhaps yes to consistency. Did the IJ say anywhere in his decision that he accepted what was said in the application about being tortured as true? He did not say it as true. I think there's an implication that there was. Well, if it is true that he was tortured, then how does this case come out? Well, I think it's inappropriate for the immigration judge to decide whether or not something is true or not before they've considered all the totality of the circumstances. Including the testimony of the witness who's not allowed to testify to this. It wasn't that he wasn't allowed to testify, Your Honor. It was that he was told it was not necessary. No, he wasn't told it was not necessary. He said he didn't want to hear it. But that was the implication. Because he's read the application. He didn't believe that testimony was necessary. Counsel, can you help me with this? I've struggled with this case. I really have. When you look at the totality of the circumstances, you look at the prison record, the aliases and the like, I can see many reasons why the IJ would not believe this man. On the other hand, I'm very troubled with the fact that he gave him a general notice to provide corroborating evidence. And in my seven years on the court, I've never seen more corroborating evidence from anybody in an immigration case. He provided news accounts, medical reports, psychiatric reports, Nigerian government documents, letters from the family members and the like. You never see that stuff. And yet he did. And yet he did. And it appears to me that the immigration judge, he seems to have made a decision based upon a failure to produce the exact information about the student group and the like that he wanted. Under the circumstances, hypothetically, if I found that there were plenty of reasons for him to disbelieve Mr. O'Shodey on other items, and I felt there was a due process problem on this other issue, what am I to do? Am I governed by the requirement of the applicant to bear the burden here? Or is there some further duty that comes from the act itself that places a duty on the IJ to basically be fair? It just doesn't seem fair, if you will, the way he ultimately seems to have decided it. Maybe he just didn't articulate the whole thing. But from the government's perspective, what am I to do in this situation? Well, the starting point for that, Your Honor, is that this is a credibility determination. And the standard for this Court to reverse a credibility determination is that the record evidence has to compel reversal. And when you add in the piece about the corroboration, which, given the Board decision here, is not the corroboration with respect to whether he was in a student group, an adult group. There is only one piece of corroboration that the Board lists when the Board says no clear error. And that is that his brother did not testify. But he was in the hospital, wasn't he? He was in the courtroom, Your Honor. His brother sitting in the courtroom where the immigration judge says to Mr. Ashodi, now, is this your brother in the courtroom? Now, is he going to testify? No, he's not going to testify. He didn't say, is this your brother in the courtroom? Mr. Ashodi said to him, my brother is in the courtroom. And he said, oh, really? That's your half-brother. Is that your half-brother? Is he going to testify? And Mr. Ashodi said no. But he didn't say, you know, you should call your brother. Can your brother corroborate? Is there any reason you're not calling your brother? Mr. Ashodi had no idea that his brother's testimony was required or would be necessary. Mr. Ashodi was represented by counsel. But nobody said to him, your brother could corroborate. We need corroboration on X point. Do you want to call your brother? Is there a reason you're not calling him? Is there some reason he's not testifying? Can you get that? Normally you would say to somebody, you know, can you get this corroborating? Your Honor, certainly an immigration judge could have done that. The question here is, does it violate due process not to? Or does it violate the statute not to? Two independent questions. Yes, Your Honor. I want to get back to what brother we're talking about here. I'm looking at 518. I don't want to debate stamp or the record. But the question is, why is your brother not here to testify? Answer, he had surgery. That was a different brother, Your Honor. That's a different brother. Okay, all right. Different brother. Never mind. Different brother. But to continue answering your question about the credibility determination and the due process issue associated with only the corroboration of the brother in the courtroom, is if this court finds that there is an issue of notice or something unfair about it, the next question is, is there prejudice? And the answer to the question of whether there's prejudice or not does, how does it influence the adverse credibility determination? Here, it would not because there's no way with this record, a substantial ---- I thought you said the only thing he found based it on was the fact that the brother didn't testify. For corroboration, Your Honor. That was the only corroboration factor to the adverse credibility determination. There are six others. So you're not going beyond corroboration? No, for the adverse credibility determination, you have to consider the totality of the circumstances. The Board identifies seven issues that it said supported its finding of no clear error. One of those issues was corroboration. The other six were inconsistencies, implausibilities, and other issues. If that brother sitting in the courtroom testimony was so important to the I.J.'s determination, could the I.J. have called him to testify? Absolutely, Your Honor. The I.J. could have. The question here is, is he required to? And the answer to that is no. There's nothing in the statute that requires that. If he could have and he thought that the brother's testimony might undermine O'Shodey's testimony, why wouldn't he have? Your Honor, the alien was represented by counsel here. Let me read to you the relevant part of the statute. Where the trier of fact determines the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence, obviously he's in the courtroom, cannot reasonably obtain the evidence, is in the courtroom, must be provided. Whether represented or not, the I.J. has an obligation to develop the record. Do you agree with that? No, Your Honor, I don't. The I.J. has no obligation to develop the record? Not in the specific role you're trying to testify in. The word here is must. Must be provided. Must be provided. But it's important how you read this statute. But isn't that burden on the petitioner to provide the evidence? Exactly. And the reason we know that, Judge Rollinson, is that the statute here, legislative history tells us, was based on matter of SMJ. And if you read matter of SMJ, it divides out the roles of the players in immigration court. This is the role of the applicant. This is the role of the service. This is the role of the immigration judge. Everything about corroboration is in the role of the individual, the applicant. And there it makes clear that the obligation is on the individual to provide the corroborating evidence. So they're on notice here. And in this case, there are five different forms of notice for Mr. Asciotti and why he should have produced the evidence in this case. It starts with this Court's decision in Sidhu, where this Court said a published decision of this circuit is sufficient notice to an alien by itself that an alien has to provide the corroboration if there's reason to question their credibility. That's the first notice. The second is the decision in matter of SMJ, followed by the Real ID Act and the changes, followed by the IJs urging here a strong recommendation, not just a recommendation, but a strong recommendation. And then the context. It's important to read in context what the questions to the alien about his brother would have meant. This followed a series of questions about his family relationships and why he didn't include his brothers on his asylum application. And what exactly, whether his father was even alive or not, which was it? Was it his father or his grandfather or his mother who had been persecuted in the past? All of those things are things that Mr. Asciotti's brother presumably would have been able to address. In Sidhu, this Court said in those same exact circumstances, it was a father, not a brother. But when the father wasn't able to appear, that could be held against the alien. The immigration judge could draw an adverse inference from that situation. And this is the same thing. There are five different forms of notice here. There's nothing unfair at all about the proceedings that Mr. Asciotti had. Now, if- You said that- I take it everything you say there about the notice and the requirements of the board and whatnot. Well, let me just- I mentioned a case called, I think it was in Murray, matter of FEFA. It's a precedent decision, 1989. And there, with respect to the obligation to let the petitioner testify, the board said, we would not- at a minimum, we find the regulations require that the applicant for asylum withholding take the stand, be placed under oath, and questioned. So on. We would not anticipate that the examination would stop at this point unless the parties stipulate that the applicant's testimony would be entirely consistent with the written materials and that the oral statement would be believably presented. In the ordinary course, however, we consider the full examination of the applicant to be an essential aspect of the asylum adjudication process for reasons related to fairness to the parties and to the integrity of the asylum process itself. So why doesn't that mandate, that direction by the board apply equally to the IJ in this kind of context? There's nothing in that decision that I understood to say that it was an absolute requirement for any hearing that the immigration judge provide the- there's no prohibition there that an immigration can't say, okay, I'm going to presume that what you're going to testify to- You didn't say I'm going to presume that it's true. That might be all right. But there's no indication that he didn't presume that. Nothing in his decision shows that he presumed the testimony about torture to be true. Well, no one would ever presume that it's true. Well, then why don't you let him testify? It's presumed that it would be consistent. And I think that would be the appropriate question to ask. If there is some indication that the immigration judge did not presume it was- that he was consistent, then I think that would be unfair because the ultimate question is fairness. You mean he presumed that his testimony that he was tortured was consistent? I'd say you can't- I think it would be appropriate to imply that any testimony that he would have provided would have been consistent with his asylum application. And I think that's why the IJ said it's not necessary here. I'm going to presume that's- I mean, the implication is I'm going to presume it's consistent. All right. Just let me get this clear. He did presume that he had been tortured? No. He would have presumed- No. But that's what he would have testified to. And that would be that it was consistent. But that doesn't mean it has to be credible. It's consistent but not necessary. Right. Not necessarily credible. The credibility determination- How can you judge the credibility if you don't let him testify and see his demeanor and make the kind of judgment you normally make? Your Honor, the immigration judge had 200 pages of transcript and the- A large chunk of the transcript was devoted to the expert's testimony. That's true, Your Honor. And at the end, you know, when the IJ was rendering his decision, the first part of his decision when he goes through the expert's testimony, in essence he says, you know, looks like there may have been persecution here. His basic story is somewhat- the expert's testimony basically confirms- If true. The essential story. It's funny. In most of these cases, we see the IJs. They go through. They take the application and everything that's in the application. Then they have the applicant testify. And then they go through line by line. When there is any discrepancy, they use it to discredit the applicant. Your Honor, this isn't one of those cases. This is one of those cases where there are multiple issues. Well, I have to say it sure isn't one of these cases. He doesn't allow him to testify either in order to trip himself up, which is the way this testimony often is used, or to bolster the testimony because he's going to be testifying forthrightly. He can withstand cross-examination. His testimony is consistent with what's in the application and so on. And then, as far as I can tell, the IJ then just sandbags him by saying, I don't believe it. But he never let him testify to it. He just concludes at the end, you know, I just don't believe you. Well, and if this Court disagrees with that determination of whether the alien is credible, the appropriate thing for this Court to say is record evidence compels reversal. And here, when you look at the seven different factors that work. Or maybe the way the record was compiled requires us to send it back to him to do a proper hearing. You know, what Judge Pires read you from FIFI said that, like in a trial, you don't say, I don't have to hear from the witness. I've read one of his affidavits. A trial is a trial. You have people come and testify. And what FIFI says is that's the way you conduct an immigration hearing. It's for the integrity of the process and fairness to the parties. You let them testify. I don't know. I haven't seen a case before where a witness wants to come and say what happened to him, the applicant, and the judge says, no, I don't want to hear what you have to say. I don't want to hear what you have to say.   You have to have a fair and fair declaration. Your Honor, I agree that it's out of the ordinary. And to the extent that you believe it's unfair, it's also important to establish prejudice here. And to establish prejudice here, you have to say that record evidence compels reversal. And unless you have some reason to suspect that the immigration judge did not presume that any testimony would have been consistent, then I don't think that there's any prejudice here. Well, prejudice, if you want us to presume that what he said was true, that he was in fact tortured, which is what he says, if we can assume that's true, well, then it's prejudice. I would say presume consistent, Your Honor, rather than presume true. But that's not the question, whether it's consistent with a declaration. The question is, could he testify before the IJ that he was tortured? But there's no presumption of credibility, Your Honor. There's what? No presumption that an alien's testimony is automatically credible. No, but if you don't let him testify, how can you say it's not credible? You don't see him. You don't look at his demeanor. You don't cross-examine him. I thought this was a proceeding. Your Honor, this alien demonstrated in these proceedings that he would say whatever it took to move his asylum application along. That was specifically to his concession about how he entered the country. And the IJ specifically identified that point that, oh, you would just say whatever's necessary to push your application along. Because there was a question about, he tried to say that he entered on a visa. And DHS was asked to find out if he actually had or not. They had no record of his entering under a visa. And he continued to push that he had actually entered under a visa. And they asked, well, do you want to concede that you entered illegally, or do you want to get another continuous and then you provide this evidence? And he said, oh, I'll just concede to this. Mr. Blankley, what does the record show regarding Mr. O'Shodey's mother's death? Is it uncontested that she was assassinated for political reasons? It's uncontested that that's what the record says, Your Honor. I want to make sure I understand. There's no presumption that that's true. That's evidence that was entered into record. And the fact finder gets to determine what is the weight that should be given to that evidence as far as whether it establishes the truth of what happened. If you look at the interview, Mr. O'Shodey's interview regarding his notice to appear, or right before he was issued the notice to appear, he is asked, you know, have any family members been harmed? And he says, yes, his father was. Then when we get to the testimony for his asylum application, he says, oh, that wasn't my father. I said grandfather. But he never said his mother during that asylum interview. So there's sort of contradictory evidence about whether that really is the mother or whether it was the grandfather or father. Where did it come out? I guess, was it in his declaration or testament? Where did it come out about his mother being assassinated for political reasons? If I remember correctly, I think it was in the asylum application, and then it would have come up again in testimony when they were discussing, you know, what the claim is. So he had his opportunity to address that, yeah. Counsel, as Judge Gould on the video, if I could ask you one question, please. The board relied in part on the lack of corroboration, including he wasn't credible. But if Mr. O'Shodey is not told by the IJ what he should corroborate, how does he know what evidence he should submit in corroboration? And absent a notice requirement, isn't there going to be a lot of wasted and inefficient effort in these hearings? Well, the notice that he has is provided by the statute and by the case law of both this court and the board. And in matter of SMJ, the board addresses what sort of corroboration would be expected. So it's not that, as Amiki claimed in this case, that there's just a universe of possible things that might be used by an immigration judge for a gotcha. It's not that situation at all. It's a situation where the board has said there are certain things, a birth certificate, membership in party, medical records, and they list a few other things, but they're listed in SMJ. Those are the types of things that we would expect to see. And so to the extent there is a notice requirement, which I would reject that statement, but to the extent there is, the alien here is clearly on notice. And then the additional notice here is a strong recommendation from the immigration judge that you need to corroborate your case here. And then in addition to that, you've got the context of the immigration hearing where the alien is represented by counsel and where the context of the hearing, the questions that have been asked leading up to the interchange about his brother in the courtroom, make clear that it's necessary to corroborate certain issues. And with those five different factors that provide notice, there's nothing unfair about these proceedings for Mr. Ashodi. Opposing counsel cited the third circuit case of TOUR. Do you agree that it takes a position requiring the notice of corroboration? It does, Your Honor. It's a pre-Real ID Act case. It's a pre-Real ID Act case. Do you think it survives? That hasn't been decided yet, Your Honor. In Abdoulaye, there's a reference that the Real ID Act does not affect that rule, but that reference to the Real ID Act is to the standard of review for corroboration findings. And it's not to this particular case. That being said, there are other cases that have addressed it. And the implication is that the rule, the third circuit's rule, would survive the Real ID Act. So when the third circuit does publish on that issue right now, I suspect that they would continue to go with the TOUR rule. But there's nothing that has addressed that in a public decision yet. Counsel, you seem to say that you're arguing for a very general level of notice. It just seems to me that the statute is directed more specifically in the language where it says, where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony. Such evidence must be provided. How does the applicant know of that determination unless the IJ tells him he's made that determination? Well, Your Honor, there's the question of notice, to the extent it's a due process issue, it goes to the fairness of the proceedings. And that's going to have to be evaluated on the other basis. When it comes to the statute, the Board hasn't addressed this. This is an ambiguous statute, and the Board has not addressed it yet. Now, to the extent that Rand says that this language is unambiguous, that has never properly been presented for review before this Court. It hasn't been refined in an adversary proceeding. Well, I asked opposing counsel if that issue was raised in the petition for re-hearing in Wren, and he said yes. A petition for review. In Wren? In Wren. Well, I would disagree that it was properly raised. The issue was not briefed in Wren. And so, to the extent that it wasn't briefed, this Court didn't have the benefit of adversarial proceedings. They did not hear the government's side of whether this statute was ambiguous or not. What this was discussing in Nirmal Singh. What is ambiguous about this language? It's saying where the trier of fact makes this determination, then such evidence must be provided. So, I mean, what is the ambiguity? Maybe it doesn't explicitly say. Maybe what you're saying, there's an ambiguity because the trier of fact can secretly make this determination and not tell? Well, the ambiguity comes from how we interpret the statute. And we have to look at the entire section as a whole. In the context of the notice requirement. Yes, Your Honor. The contents, we have to look at the context of the statute. We have to look at the statutory scheme. We have to look at what these words say and some of the rules of statutory interpretation. And so, what I would say is you have to look at the first sentence here first. And if you read that, it would be appropriate to read that saying with a past tense construction. In other words, to say the testimony of the applicant may be sufficient, but only if the applicant has satisfied the trier of fact that the applicant's testimony was credible, was persuasive, and referred to specific facts. Because when an IJ makes that determination at the end. That's the point. Okay, so it may be sufficient if it satisfies these factors. But if it doesn't satisfy these factors, then it's insufficient to meet the burden. But how does the applicant or petitioner know that it's insufficient unless the IJ tells them specifically in the context of the individual petition that's before him right then and there. It's for the actual determination. When the IJ makes the determination, he then looks to, was the applicant persuasive? Did he refer to specific facts? The immigration judge is looking back. And so, what I'm saying about this being ambiguous is when that first sentence, when you can use the past tense construction for that first sentence, then you also by convention can use the past tense construction for the following sentence. Thank you. But your position ends up with the IJ, as he did here, essentially sandbagging the applicant. Not telling him ahead of time he needed the evidence. The evidence is complete. The IJ then writes his decision or gives the oral decision saying, well, you know, you didn't provide evidence X, Y, and Z because I determined that you needed corroboration. Well, this is the first time he's ever heard it. That is called in the technical term of law sandbagging. Your Honor, I would disagree with sandbagging in the sense that there are five different. We understand. Chief Judge. Thank you, Your Honor. Judge Gould. We lost Judge Gould. Okay. You want me to go ahead? Please. Okay. I'd like to just a few of the points. I think as Judge Wardlaw, you were indicating, I think the statute is clear that the judge has to give that notice and instruction and must get determination, but also as we stated in our briefs, I think due process requires that also. Just as this Court has held that when there's inconsistencies in testimony, the judge must surprise the individual of those alleged inconsistencies and give him or her an opportunity. But how can the statute be clear if it doesn't expressly impose any obligation on the IJ? I think the reading of it, Your Honor, does impose it where the IJ determines. So the IJ has to determine. It must provide an opportunity to give the applicant to respond, must advise the individual that he can. In other provisions within the code, there are specific requirements of notice to the petitioner. This one does not contain that. What do we make of the fact that in other provisions there is a specific reference to notice and in this one there isn't? Well, I think the reading of the statute, although it doesn't say the word notice in there, I think the only proper reading of the statute, with all due respect, Your Honor, is that it says notice is required because it says where the immigration judge determines that corroboration is required, the applicant must produce it. As Judge Ward notes, how is the person supposed to know that they're supposed to produce it unless they're given notice of that? How does any person know when they're trying to prove a case in court that they have to produce evidence in support of their claims? How does any litigant know that? If people get sentenced to death, they understand, they testify, the jury doesn't believe them. They don't get notice. The jury doesn't say, hey, you know, we don't believe you because you didn't bring corroboration in. This is just the way this adversary system works. I think that's Judge Rowland's point. Why does an immigration petitioner in a better position than somebody accused of crime? Precisely for the reasons that Judge Smith referenced. This case is overwhelmingly strong with corroboration. There was police reports. There was medical reports. There was hospital reports. Yet the immigration judge in his decision then announces, but wait a minute. I want – there was no evidence presented about NAMS. There was no evidence presented about other factors here. And so the applicants left, and this court is going to establish a rule that the applicants will sit there and guess every single thing that the immigration judge might have a question about and produce corroborating evidence on that? That's how it works in every other trial in this country. This is how it works. You put your witnesses on the stand. You put your evidence on the stand. If you're a defendant in a criminal case, you testify or you don't testify.  The jury doesn't tell you what they want from you. You've got to understand this is not like other cases. Correct your ass. Because in all the cases Judge Kaczynski talks about, if you want to take the stand as a defendant and testify, nobody says to you, I don't want to hear that testimony. I read some of the papers. So it's not exactly like – or maybe it is. Maybe you should have the right to get up and testify before the immigration judge and tell your story. But this seems to be somewhat different. I'm sorry. Do you want to answer the question or do you want us all to go as judges? I think he's doing a great job. But he's not to complete my question. But he's really not. Maybe this is a little different proceeding than in Judge Kaczynski's ordinary civil trial because this takes place in Afghanistan or Africa or somewhere else. So we have rules set forth in the statute. It's not like just going to court and proving your cases. Is it is my question. And in case law, Your Honor. There was a question and, yes, the answer is to that. There is case law that says that also. Because of the asylum applicant, because of the peculiar nature of an asylum applicant, doesn't leave his country, the Supreme Court said, I could also forsake with a note from this dictator. Because of that, the evidence rules are a little more lax here. But those cases do not address the notice requirement to which you refer today. Those cases don't address whether or not the IJ has. Take a minute. Okay. You missed a good part of the hearing. Sorry about that, Judge Golden. I missed a few minutes, but I'll listen to the tape to pick up what I missed. Sounds good. Counsel, I have a question. I agree with you. I think there's a lot of corroborating evidence here. But as I read the statute, it talks about the fact that even where a witness is otherwise found to be credible, the IJ can still require corroborating evidence. Right? This witness wasn't otherwise found to be credible. It's not just a question of the IJ saying, hey, I want some more corroborating evidence. The IJ looked at some inconsistencies between the application and the testimony on the stand that the witness had an opportunity to respond to. So why isn't the government right that this is just a credibility determination that you can answer before you ever get to corroborating evidence? Because, Your Honor, because the Board of Immigration Appeals in this decision, and this is at A03, says, we again find that the immigration judge was correct in finding that the respondent was not credible in part because he failed to provide corroborating evidence. So in this case, you cannot separate out the lack of corroborating evidence from the adverse credibility. But why can't I? Why isn't it just enough if I think that there's an inconsistency that the IJ noted, not that I'm making up, but the IJ found, that seems to me to be sufficiently supportive of the credibility determination. And specifically, I'm not trying to hide the ball there. I'm looking at the inconsistency between the statement to the immigration officer about the mother and then the statement to the immigration officer that dad's political involvement was the reason he would, quote, be a dead man if he went back to Nigeria. Then I think, if my notes are correct, a statement in the asylum application that his parents divorced over his mother's political involvement, and that's why the family was persecuted. And then the testimony on the stand about the grandfather. So why wouldn't that be enough? Because you cannot assume that the board would have decided that, but without the lack of corroborating evidence, it would have come to the same conclusion. Because the board based its conclusion, at least in part, and this court can't say, well, we're going to assume no prejudice here, because even if we think there was a due process violation, a statutory violation here, the board probably would have come to the same decision. We can't assume that because it was so integral a part of the decision. And the Sidhu case, by the way, which the governor mentioned, says that specifically. It says petitioner must be given an opportunity at his IJ hearing to explain his failure to produce material corroborating evidence. So this court has long, long held that. That's different. That's a failure to produce corroborating evidence. I'm going back to the consistency. So let me ask you this. You're talking about what the BIA found, but let me just ask you, as to the IJ's credibility determination, do you think the IJ hinged that or made that contingent upon the lack of credibility? Lack of corroborating evidence, you mean? Forgive me. Lack of corroborating evidence? Yes. Yes, you already did. And the Sidhu case, by the way, was a credibility decision in the end, not just a proven proof issue. The death certificate, I do want to talk about that. That's at AR 764. That was excluded from the evidence. The police report was excluded from the evidence. And two police reports were excluded from the evidence. And the medical hospital report, too. Those were all significant corroborating evidence, and those were errors that we think need to be reversed by this court alone. I usually want to lay this under the totality of the circumstances, even though there's a lot of evidence that my colleague here has just delineated, that had there been no corroborating evidence issue, the IJ could have clearly ruled that nobody really had much of a basis for claiming otherwise, that there was no basis here. You're saying that since the corroborating evidence issues and the due process issues that come from those are, in effect, married, that they rise and fall together. Is that your position? They do, Your Honor, because the totality of circumstances now is both favorable and unfavorable. So the court, the IJ precluded the corroborating evidence. Thank you. Thank you, Your Honor. Cases, Your Honor, give us 10 minutes. We're adjourned. Thank you.
judges: Kozinski, Reinhardt, Wardlaw, Fletcher, Gould, Paez, Rawlinson, Bybee, Smith, Murguia, Christen